# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

DAVIDA JACKSON,

   Plaintiff,

v.

NORFOLK SOUTHERN RAILWAY
COMPANY,

   Defendant.

CIVIL ACTION FILE

No. 1:20-cv-00859-MLB-AJB

## UNITED STATES MAGISTRATE JUDGE'S ORDER
## AND NON-FINAL REPORT AND RECOMMENDATION

Currently before the Court is Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint ("Motion to Dismiss") and Plaintiff's First Motion for Extension of Time to File Response to Defendant's Motion to Dismiss Second Amended Complaint ("Motion for Extension"). [Docs. 31, 34]. For the reasons stated below, the Court **DENIES** the Motion for Extension and **RECOMMENDS** that the Motion to Dismiss be **GRANTED IN PART AND DENIED IN PART**.

I.   <u>Introduction</u>

Plaintiff filed her counseled complaint on February 25, 2020. [Doc. 1]. On April 6, 2020, Plaintiff filed her first amended complaint, alleging a due process violation under the Georgia Constitution, invasion of privacy in violation of the

Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936 (1996) ("HIPAA"), age discrimination under the Age Discrimination Employment Act, 29 U.S.C. § 621 et seq., ("ADEA"), race discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e et seq., and intentional infliction of emotional distress ("IIED"). [Doc. 4 at 9-17].

Following service, Defendant moved to dismiss the amended complaint on August 24, 2020. [Doc. 15]. Plaintiff did not file a response. (*See generally* Dkt.). Instead, on September 24, 2020, Plaintiff filed a motion for leave to file a second amended complaint ("SAC"). [Doc. 18]. In the proposed SAC, Plaintiff asserted claims for violations of her due process rights, breach of contract, the Family Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA"), race discrimination under Title VII, age discrimination under Title VII and the ADEA, and IIED. [Doc. 18-1 at 8-22].

On November 4, 2020, the Court denied without prejudice Plaintiff's motion for leave to file a second amended complaint. [Doc. 21]. The Court noted that Plaintiff had provided no justification for seeking to amend her complaint six months after her initial filing and did not file a reply brief providing any such justification. [*Id.* at 6]. The Court permitted Plaintiff to file a second motion for

leave providing an explanation for her delay within 21 days. [*Id.* at 7]. On November 25, 2020, Plaintiff filed her second motion for leave and a motion or an extension of time to respond to Defendant's motion to dismiss. [Docs. 22, 23]. Defendant filed its responses on December 29, 2020. [Docs. 25, 26].

On January 25, 2021, the Court granted Plaintiff's Motion for Leave to File a Second Amended Complaint and recommended that the motion to dismiss be denied as moot. [Docs. 27, 28]. The Court's recommendation was adopted by the District Judge on February 12, 2021. [Doc. 32].

On February 4, 2021, Defendant filed the Motion to Dismiss the SAC currently under consideration. [Doc. 31]. Plaintiff did not file a timely response. (*See generally* Dkt.). Instead, on March 15, 2021, Plaintiff filed the Motion for Extension before the Court. [Doc. 34]. The Court addresses the Motion for Extension first, and then proceeds to discuss the Motion to Dismiss the SAC.

II.    Motion for Extension

In her Motion for Extension, Plaintiff claims that when she was granted leave to file the SAC on February 12, 2021, her request for more time to respond to Defendant's motion to dismiss the first amended complaint was thereby rendered moot. [Doc. 34 at 2-3]. Thus, she contends, Defendant's Motion to Dismiss the SAC filed on February 4, 2021, even though the District Court had not adopted

3

Plaintiff's Second Amended Complaint as the operative complaint in this matter. [*Id.*]. She argues that the Motion to Dismiss indicates that it contains information that Defendant opposed in Plaintiff's First Amended complaint, which was rendered moot by the adoption of the Report and Recommendation. [*Id.* at 3-4]. Plaintiff argues that this gave the appearance that the Motion to Dismiss was premature. [*Id.* at 4].

She contends that her counsel was made aware of the Motion to Dismiss on March 4, 2021 by his legal assistant who had delayed informing him of it because she believed the Court's Order adopting Plaintiff's SAC was the most recent and pending document and she did not see the February 4, 2021 Motion to Dismiss. [*Id.*]. Plaintiff argues that granting the Motion for Extension will not prejudice Defendant and was not made for delay or dilatory purpose but in good faith to preserve a meritorious complaint. [*Id.* at 5].

Plaintiff attached the affidavit of Leigh McMutry, who is the Legal Assistant for Plaintiff's counsel. [*See* Doc. 34-2]. She avers that counsel closed his law office temporarily in March 2020 and she found other employment but was still able to work on a reduced schedule, Mondays and some evenings, and at reduced pay. [*Id.* at 1-2]. McMutry states that counsel relies on her for all of his electronic communication and because he is not comfortable with technology, the office is

4

very dependent on U.S. Mail.  [*Id.* at 2].  She avers that the Motion to Dismiss did not come via U.S. mail and was somehow overlooked or deleted by her electronically.  [*Id.*].   McMutry avers that she believed the undersigned's R&R was the controlling document and, after receiving it, expected to see objections from Defendant.  [*Id.* at 3].  When she did not see any objections, she avers that she waited for a response from Defendant.  [*Id.*].  On March 8, she avers that she saw the Motion to Dismiss was submitted to the Judge but did not realize it had been filed on February 4, 2021.  [*Id.*].  After further investigation, she discovered on March 13, 2021 that it had been filed on February 4, 2021 and brought it to counsel's attention that day.  [*Id.*].

Defendant did not file a response.  (*See generally* Dkt.).[1]

The Court finds that the Motion for Extension should be **DENIED**.  The Court notes first that it granted Plaintiff's Second Motion for Leave on January 22, 2021.  [Doc. 27].  That filing made clear that the undersigned was able to rule on the Second Motion for Leave by Order, [*id.* at 1 n.1], and that, having granted the

---

[1]      Under this Court's Local Rules, when a non-moving party fails to file a response the motion is considered unopposed.  *See* LR 7.1(B), NDGa.  That a motion is unopposed, however, does not mean that it will automatically be granted. In the present case, the Court finds good cause for the motion to be denied as discussed below.

motion, "Plaintiff's Second Amended Complaint is therefore now the operative pleading in this matter," [*id.* at 12].  Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint, filed on February 4, 2021, [Doc. 31], was therefore not premature.  While the Court did issue a document titled Non-Final Report and Recommendation on January 25, 2021, mistakenly also labeled as an Order, that document itself states that the Second Motion for Leave has been granted and, "[a]s a result, Plaintiff's second amended complaint . . . is now the operative pleading in this action."  [Doc. 28 at 3].

Under Rule 6(b)(1)(B) of the Federal Rules of Civil Procedure, the district court may, for good cause, extend the time for filing a motion after the deadline has expired if the untimely filing was due to excusable neglect, and that in evaluating "excusable neglect" under this rule, courts consider "(1) the danger of prejudice to the nonmovant; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith." *Ashmore v. Sec'y, Dept. of Transp.*, 503 Fed. Appx. 683, 685-86 (11th Cir. Jan. 3, 2013) (per curiam).  The question of whether a party's neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission."  *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*,

6

507 U.S. 380, 395 (1993); *see also Fisher v. Office of State Attorney 13th Judicial Cir. Fla.*, 162 Fed. Appx. 937, 940 (11th Cir. Jan. 19, 2006) (per curiam).  "The responsibility for the error falls on the attorney regardless of whether the error was made by an attorney or a paralegal."  *Pincay v. Andrews*, 389 F.3d 853, 856 (9th Cir. 2004).

Reviewing the procedural history of this case, the Court finds that the balance of equities weighs against granting the Motion for Extension.  *Pioneer Inv. Servs. Co.*, 507 U.S. at 395; *Fisher*, 162 Fed. Appx. at 940.  In particular, the Court notes that Plaintiff failed to timely respond to Defendant's previous motion to dismiss.  [*See* Doc. 15; *see generally* Dkt.].  Indeed, a month after Defendant had filed its Motion to Dismiss, Plaintiff instead filed a Motion for Leave to file a Second Amended Complaint.  [Doc. 18].  The Court denied that Motion on the basis that the motion itself provided no justification for an amendment and Plaintiff did not file a reply in support of it.  [*See* Doc. 21 at 6].  Nevertheless, the Court granted Plaintiff the opportunity to file second motion for leave providing an explanation for her delay in moving to leave and failing to respond to Defendant's Motion to Dismiss.  [*Id.* at 7].

Plaintiff filed her Second Motion for Leave to File a Second Amended Complaint on November 25, 2020. [Doc. 23].  In granting that motion, the Court

noted Plaintiff's argument that she had misunderstood her Second Amended Complaint to be her "free" amendment under the Local Rules and did not consider Plaintiff's Motion to Dismiss to be a responsive pleading. [Doc. 27 at 4]. In an attached affidavit, Plaintiff's counsel explained that he had limited staff because his business was impacted by COVID-19, although his paralegal made herself available to him on an "as needed" basis. [*Id.* at 4-5; *see also* Doc. 23-1]. Counsel also explained that he and his son both had serious health conditions. [Doc. 23-1]. Based on these arguments and representations, the Court granted the Second Motion for Leave over Defendant's opposition. [Docs. 26-27].

Here, Plaintiff has again failed to file a timely response to a pending motion to dismiss and points to the same factors as excusable neglect. The Court finds those arguments unconvincing. First, as noted above, Defendant's filing of its Second Motion to Dismiss was not premature. Confusion by the legal assistant working for Plaintiff's counsel regarding when and what responsive papers are due does not provide a sufficient basis for granting the Motion for Extension. *Pincay*, 389 F.3d at 856. It is an attorney's responsibility to ensure that filings are timely made. *Id.* Ms. McMutry avers that counsel is unable to use technology effectively and that they rely on the mail, but that she did not receive the Second Motion to Dismiss in the mail. [Doc. 34-2 at 1-2]. However, even if it was only received

electronically, courts have held that "the inadvertent failure to calendar the motion to dismiss deadline was not excusable neglect." *Zabala v. Integon Nat'l Ins. Co.*, No. 20-20751-CIV, 2020 WL 2129584, at *1 (S.D. Fla. May 5, 2020). Particularly in the current matter, where Plaintiff already failed to timely respond to motion to dismiss and had that failure excused by the Court, it was incumbent upon counsel for Plaintiff to ensure that all filings were made in a timely manner.

Applying the factors laid out in *Ashmore*, the Court finds that Plaintiff's failure to timely respond to the Motions to Dismiss creates prejudice and uncertainty in the case, the length of the delay, roughly a month, was significant, and the reason for the delay is unpersuasive, as discussed above. *Ashmore*, 50 Fed. Appx. at 685-86. The Court does not question whether Plaintiff has acted in good faith, but finds that factor to be outweighed by the others. *Id.* The Court therefore finds that the Motion for Extension is due to be **DENIED**. The Court therefore turns to an analysis of the Second Motion to Dismiss.

III.   Motion to Dismiss

    a.   Argument

Defendant argues that, even after amending her complaint twice, Plaintiff's pleading misses the mark. [Doc. 31 at 1-2]. First, Defendant claims that Plaintiff's due process and breach of contract claims are not actionable because an alleged due process violation requires governmental action. [*Id.* at 3-4]. To the extent that Plaintiff asserts these claims arise under the Collective Bargaining Agreement between itself and the Transportation Communication Union ("TCU"), Defendant argues that they are pre-empted by the Railway Labor Act, 45 U.S.C. § 151 *et seq.* ("RLA"). [*Id.* at 4]. Defendant argues that the compulsory arbitration requirement includes claims regarding disciplinary proceedings and grievance procedures. [*Id.* at 5].

Defendant contends that Plaintiff's race and age discrimination claims under Title VII and the ADEA fail because she admittedly failed to file an EEOC Charge within the statutory 180-day period. [*Id.* at 5-6]. Defendant asserts that Plaintiff's equitable tolling argument fails because she should have known of the facts that supported her claim, specifically her termination, and filed an EEOC Charge within 180 days of that date. [*Id.* at 6]. Defendant argues that Plaintiff was terminated on August 25, 2017 and so missed her 180-day statutory limitations period by more

10

than two years. [*Id.* at 6-7].   It contends that Plaintiff cannot avoid this deficiency by claiming her termination was not final until her internal appeal was extinguished, as this argument has been specifically rejected by the courts. [*Id.* at 7].  Moreover, it notes that Plaintiff has argued that her termination, not the final decision of the Railway Arbitration Panel, was discriminatory.  [*Id.*].  Finally, it argues that, even calculated from the date she received the Railway Arbitration Panel's final decision, her filing was untimely.  [*Id.*].

Defendant contends that Plaintiff's claim for IIED is barred by the applicable statute of limitations and that the factual assertions set forth in the Second Amended Complaint are inadequate to establish an IIED claim.  [*Id.* at 7-8].  Specifically, Defendant argues that Plaintiff has failed to plead facts showing that its conduct was "extreme and outrageous" and that terminations alone are not actionable. [*Id.* at 9].

b.    Applicable Law

A court will grant a Rule 12(b)(6) motion to dismiss if the complaint "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In determining whether a cause of action fails to state a claim on which relief may be granted, the Court must dismiss "if as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the

11

allegations' . . . without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *see also Harford v. Delta Air Lines, Inc.*, No. 1:06-cv-2218-WSD, 2008 WL 268820, at *2 (N.D. Ga. Jan.30, 2008) ("Dismissal of a complaint is appropriate 'when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action.' ") (quoting *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

     c.   <u>Facts</u>

In the SAC, Plaintiff alleges that the actions forming the basis of this case occurred during her employment with Defendant in its Atlanta, Georgia, facility and were carried out by its employees.  [Doc. 18-1 at 2].  Plaintiff states that she has exhausted all of her administrative remedies pursuant to the RLA.  [*Id.*].  She states that she was denied relief by the Railway Arbitration panel in a letter she received on January 27, 2020.  [*Id.* at 3].  She states that she did not file an EEOC Complaint because her obligations were not triggered before she had reason to

believe that unlawful discrimination had occurred and that her unlawful termination was a pretext to cover Defendant's illegal motive. [*Id.*].

Plaintiff alleges that she is a white female who had worked as a CPA Clerk in Defendant's Waybill Processing Department since August 31, 1999. [*Id.* at 4]. She alleges that on May 12, 2017, Defendant received a request for intermittent FMLA leave for her serious health conditions and her certified leave period was from May 1, 2017 to April 30, 2018. [*Id.* at 5]. On August 11, 2017, Plaintiff alleges she reported to work at 6 a.m. but realized she had a doctor's appointment and contacted her supervisor via email to request FMLA leave for a 9:30 a.m. appointment, which was approved. [*Id.*]. Plaintiff left work at 9 a.m. and alleges that her supervisor contacted the police department to follow her home and videotape her activity. [*Id.*].

On August 25, 2017, she alleges that she was terminated in front of her co-workers and told to get her personal items and leave the premises for marking off work under false pretenses and making an untruthful statement in her email requesting leave on August 11, 2017. [*Id.* at 5-6].

Plaintiff alleges that, on August 28, 2017, her Union Representative requested a grievance hearing to challenge her termination, which was scheduled for September 5, 2017. [*Id.* at 6-7]. She alleges that her two Union Representatives

13

represented her, but no discovery was conducted and the rules of evidence did not apply as the Defendant's whole case was based on a witness recounting the hearsay declaration of the police investigator who had followed her.  [*Id.* at 7-8].

In her first Count, Plaintiff alleges violations of her due process rights when Defendant terminated her for failing to comply with the "mark off" provisions of an unsigned letter and for lying about a doctor's appointment.  [*Id.* at 8-9].  She alleges that she challenged her termination and expected a fair and impartial hearing but Defendant presented no witnesses who testified based on personal knowledge and that other irregularities occurred.  [*Id.* at 9-10].

In her second Count, Plaintiff argues that her unlawful termination constituted a breach of the CBA and a violation of Defendant's FMLA policy.  [*Id.* at 10].  Plaintiff alleges that, on the morning of August 11, 2017, she realized she had a doctor's appointment associated with her certified FML intermittent leave and notified her supervisor who approved her request without questions or inquiry as to when she would return to work.  [*Id.* at 11-12].  She alleges that she had no reason to believe her supervisor expected her to return to work.  [*Id.* at 12].  She argues that she had not received any warnings from Defendant for prior "mark-off"

times for the FMLA and her termination was a breach of the CBA and the standards set forth in the Department of Labor, Wage, and Hour division. [*Id.* at 14].

In her next Count, Plaintiff alleges she was unlawfully terminated as a pretext to cover Defendant's illegal motive of race and age discrimination. [*Id.* at 14]. Plaintiff alleges that she had outstanding accomplishments as an employee but was denied a position she applied for allegedly because she did not have a college education. [*Id.* at 15-16]. She alleges that her termination was for allegedly lying about a doctor's appointment she had was in fact a pretext to cover Defendant's illegal motive in discriminating against her because of her age. [*Id.* at 16]. Plaintiff alleges that she was racially discriminated against because of her affinity to date black men, which was not a secret in her department. [*Id.* at 17]. She alleges that her meeting her black male fiancée for lunch as witnessed by an investigator, was what triggered rage and urgency in her termination. [*Id.* at 19]. Plaintiff alleges that Defendant had an obsession with her affinity to black men. [*Id.*].

Plaintiff next alleges IIED through her wrongful termination without cause and through her being falsely accused of lying and failing to comply with an unsigned letter from Human Resources. [*Id.* at 21]. She argues that Defendant's actions were strictly a pretext, she was terminated in a humiliating way and escorted

out of the building, and Defendant's acts and omissions were intentional, malicious, and in reckless disregard of her emotions. [*Id.* at 22]. She alleges that, as a result of Defendant's extreme and outrageous conduct, she needed to seek medical attention. [*Id.*].

    d.    <u>Analysis</u>

        i.    <u>Due Process</u>

The SAC appears to discuss both due process generally and in relation to the CBA. The Court therefore addresses both. "The Fourteenth Amendment protects against the government's deprivation of liberty or property without procedural due process." *Warren v. Crawford*, 927 F.2d 559, 563 (11th Cir. 1991). As Defendant points out, to bring a valid due process claim, Plaintiff must prove a government actor or state action violated her rights. *David v. Prudential Sec., Ind.*, 59 F.3d 1186, 1190 (11th Cir. 1995) ("[I]t is axiomatic that constitutional due process protections 'do not extend to "private conduct abridging individual rights' " (quoting *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988)); *see also Etkind v. Suarez*, 271 Ga. 352, 356, 519 S.E.2d 210, 214 (Ga. 1999) ("The due process clause of the Georgia Constitution only protects Georgia citizens against state action, and does not affect the conduct of other private individuals"). Here, Plaintiff has failed to allege that Defendant is a government actor. [*See*

16

Doc. 18-1 at 4 (stating that Defendant is a "for profit" corporation)].  To the extent a constitutional due process claim was alleged, Plaintiff has failed to make out such a claim.

Plaintiff also appears to allege a due process claim based on violations of the CBA.  [*See, e.g.*, Doc. 18-1 at 9 ("the CBA includes Notice and Hearing as a matter of right in matters where one's rights are involved")].  The Court concludes that Plaintiff's allegations related to violations of the CBA are preempted by the RLA.

The purpose of the RLA is to provide an avenue for unions and carriers to resolve their disputes with the federal courts being used only as a last resort.  *CSX Transp., Inc. v. Bhd. of Maint. of Way Emps.*, 327 F.3d 1309, 1323 (11th Cir. 2003).  To that end, the RLA establishes a mandatory framework for the resolution of "minor disputes" involving the interpretation of collective bargaining agreements and reserves their adjudication solely to boards of adjustment.  *Geddes v. Am. Airlines, Inc.*, 321 F.3d 1349, 1351 (11th Cir. 2003).  Minor disputes are those growing out of grievances or out of the interpretation or application of agreements related to working conditions, rules, or rates of pay.  *Caravello v. Am. Airlines, Inc.*, 315 F. Supp. 2d 1346, 1351 (S.D. Fla. 2004).  The allegation that a grievance hearing was conducted in an unfair manner is a minor dispute.  *See, e.g.*, *Kozy v. Wings W. Airline, Inc.*, No. C-94-1678 FMS, 1995 WL 32915, at *3

17

(N.D. Cal. Jan. 25, 1995), *aff'd and remanded sub nom. Kozy v. Wings W. Airlines, Inc.*, 89 F.3d 635 (9ᵗʰ Cir. 1996) (stating that there "is no question that these causes of action are considered 'minor disputes' under the RLA). Accordingly, whatever their basis, the Court concludes that Plaintiff's due process claim is due to be dismissed.

ii.     <u>Breach of CBA and Violation of Defendant's FMLA Policy and Procedure</u>

With regard to Plaintiff's breach of CBA claims, the Court concludes that they are again preempted by the RLA. *Geddes*, 321 F.3d at 1351; *Caravello*, 315 F. Supp. 2d at 1351. In this Count, Plaintiff alleges irregularities during her 2017 hearing and decision. [*See* Doc. 18-1 at 12-13]. These qualify as minor disputes, as explained above. *See, e.g.*, *Kozy*, 1995 WL 32915, at *3.

However, the Court notes that this Count of the SAC also mentions the FMLA and that Defendant has not addressed the FMLA in its Motion to Dismiss. [*Compare* Doc. 18-2 at 10-14, *with* Doc. 31 at 3-5]. The Court notes that Plaintiff's FMLA claim is not entirely clear, as the statute itself is not cited and Plaintiff instead cites to Fact Sheets provided by Defendant that are not in the record. [*See, e.g.*, Doc. 18-1 at 12 (citing to "Norfolk Southern Fact Sheet" and "NS Fact Sheet")].

18

Regardless, the FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D).  "To protect the availability of these rights, the FMLA prohibits employers from interfering with, restraining, or denying 'the exercise of or the attempt to exercise' any rights guaranteed under the Act."  *McCarroll v. Somerby of Mobile, LLC*, 595 Fed. Appx. 897, 900 (11th Cir. Dec. 12, 2014) (quoting 29 U.S.C. § 2615(a)(1)).

The Eleventh Circuit has recognized two types of claims under the FMLA.  First, the FMLA "protects employees against interference with the exercise or attempted exercise of their substantive rights under the statute."  *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1247 (11th Cir. 2015).  In order to state a claim for interference, the employee must allege that she was "entitled to a benefit under the FMLA and was denied that benefit."  *Id.*  Second, an employee may assert a claim for retaliation under the FMLA, which is an allegation that the "employer discriminated against [the employee] because [s]he engaged in an activity protected by the [FMLA]."  *Pereda v. Brookdale Senior Living Cmtys., Inc.*, 666 F.3d 1269, 1272 (11th Cir. 2012).  To establish retaliation, an employee has the "increased burden" of demonstrating that her employer intentionally discriminated against her

19

for exercising a right guaranteed under the FMLA.  *Martin v. Brevard Cty. Pub. Sch.*, 543 F.3d 1261, 1267-68 (11th Cir. 2008).

In the present case, Plaintiff alleges that she sought and received intermittent FMLA leave, that she attempted to use that leave to attend a doctor's appointment, and that she was wrongly terminated on the basis of using that leave.  [*See* Doc. 18-1 at 5-6, 10-14].  Plaintiff therefore appears to have articulated an FMLA claim and, because Defendant has not moved to dismiss it, the claim must survive.

iii.    <u>Discrimination under Title VII and the ADEA</u>

Before a plaintiff can file a lawsuit for discrimination under either the ADEA or Title VII, she must first file a charge of discrimination with the EEOC.  *See* 42 U.S.C. § 2000e-5(e) (providing administrative exhaustion requirements under Title VII); *see also Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001) (noting that administrative exhaustion is required for Title VII claims); *Rizo v. Ala. Dep't of Human Res.*, 228 Fed. Appx. 832, 835 (11th Cir. Jan. 31, 2007) (per curiam) (recognizing administrative exhaustion required for ADEA claims).  The exhaustion rule is in place so that the EEOC may have the first opportunity to investigate the alleged discriminatory practices "to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts."  *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929

20

(11th Cir. 1983).  The requirements for administrative exhaustion include filing a charge of discrimination with the EEOC within 180 days of the alleged discriminatory employment practice.  *Rizo*, 228 Fed. Appx. at 835.

"When equitable tolling applies, it tolls Title VII's statute of limitations period until the date a plaintiff 'knew or reasonably should have known that she was being discriminated against.' "  *Thomas v. Bed Bath & Beyond*, 508 F. Supp. 2d 1264, 1277 (N.D. Ga. 2007) (quoting *Carter v. West Pub. Co.*, 225 F.3d 1258, 1265 (11th Cir. 2000)).  In other words, the timely filing period "does not start to run until the facts which would support a charge of discrimination are apparent or should be apparent to a person with a reasonably prudent regard for his rights."  *Sturniolo v. Sheaffer, Eaton, Inc.*, 15 F.3d 1023, 1025 (11th Cir. 1994) (citing *Reeb v. Econ. Opportunity Atlanta, Inc.*, 516 F.2d 924, 931 (5th Cir. 1975)). "Equitable tolling is appropriate when a movant untimely files because of extraordinary circumstances that are both beyond [her] control and unavoidable even with diligence."  *Sandvick v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999).

In the current matter, Plaintiff admits that she did not file an EEOC Charge, but alleges that her obligation to do so was not triggered because she had no reason to believe that unlawful discrimination had occurred and that her unlawful

termination was a pretext to cover Defendant's illegal motive.  [Doc. 18-1 at 3].

Plaintiff relies on *Reeb v. Econ. Opportunity Atlanta, Inc.*, 575 F.2d 924

(5th Cir. 1975), as support, but subsequent decisions by the Eleventh Circuit have

determined that "that decision involved active deception by the employer."

*Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 972 (11th Cir. 2016).  When

a plaintiff does not allege that an employer actively misled her, "the general test

applies: a plaintiff seeking equitable tolling must prove diligence and extraordinary

circumstances."  *Id.*  Here, Plaintiff has not alleged that Defendant actively misled

her and so, to succeed, she must satisfy the "general test."  [*See generally* Doc. 18-

1].  The Court finds that she has failed to do so.

First, Plaintiff does not allege that she ever filed an EEOC Charge.  [*See

generally id.*].  As she has included Title VII and ADEA claims in the SAC, she

clearly became aware of the alleged discrimination prior to filing suit.  The SAC

provides no explanation as to why a Charge was not filed at that point, which alone

is an appropriate basis for dismissal.  In any event, the SAC alleges acts of

discrimination while Plaintiff was employed with Defendant.  For example,

Plaintiff alleges that her manager berated her and said that her doctor was not "bona

fide," because he was black.  [Doc. 18-1 at 20].  Plaintiff further alleges that an

employee of Defendant told a union representative that "we need to get rid of some

of these old people." [*Id.* at 16].  Facts such as these would indicate to a person

with a reasonably prudent regard for her rights that her allegedly wrongful

termination, which she separately claims was not justified, was discriminatory. *See*

*Reeb*, 516 F.2d at 931.  Plaintiff's Title VII and ADEA claims are therefore subject

to dismissal for lack of exhaustion.

iv.     <u>IIED</u>

To establish a claim for IIED in Georgia, a plaintiff must show that: (1) the

conduct was intentional or reckless; (2) the conduct was extreme or outrageous;

(3) there is a causal connection between the wrongful conduct and the emotional

distress; and (4) the resulting emotional distress is severe. *Thornton v. Jackson*,

998 F. Supp. 2d 1365, 1382 (N.D. Ga. 2014) (citing *Northside Hosp., Inc.*

*v. Ruotanen*, 246 Ga. App. 433, 541 S.E.2d 66, 68-69 (2000)).  As to the second

element, the question of whether conduct is outrageous and egregious is a question

of law for the Court. *Id.*  This element requires the defendant's conduct be "so

outrageous in character, and so extreme in degree, as to go beyond all possible

bounds of decency, and to be regarded as atrocious, and utterly intolerable in a

civilized community." *Id.*

In the SAC, Plaintiff alleges that she was wrongly terminated, falsely

accused of lying as a pretext to over Defendant's unlawful motive of race and age

23

discrimination, and terminated in front of her peers "in the most humiliating way and escorted out of the building after 19 committed years of service." [Doc 18-1 at 22]. However, under Georgia law a "false accusation of dishonesty or lack of integrity in connection with one's employment conduct" is not sufficient to establish a claim for IIED. *Peoples v. Guthrie*, 199 Ga. App. 119, 121, 404 S.E.2d 442, 444 (1991). Also, termination, no matter how stressful to an employee, is generally not sufficient to support an IIED claim. *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1229 (11th Cir. 1993) (holding that an employee's termination, without warning and after 38 years of employment, might have been harsh or unkind but was not outrageous enough to support a claim for IIED).

Here, viewing the facts in the light most favorable to Plaintiff, the Court finds that the conduct she complains of was not extreme or outrageous enough to support an IIED claim under Georgia law. *Thornton*, 998 F. Supp. 2d at 1382. Termination and accusations of dishonesty are insufficient. Plaintiff additionally alleges that she was fired in public, in front of her peers, but while this may qualify as harsh and unkind, the Court finds that it was not beyond all possible bounds of decency. *Id.*

Alternatively, the Court notes that the statute of limitations for IIED claims in Georgia is two years. *Rite Aid of Ga., Inc.*, 918 F. Supp. 2d 1292, 1304-05 (M.D.

24

Case 1:20-cv-00859-MLB   Document 37   Filed 07/23/21   Page 25 of 25

Ga. 2013) ("The law is clearly established that IIED claims under Georgia law are subject to a two-year statute of limitations.")  In the present matter, the source of Plaintiff's IIED claim is her firing, which occurred on August 25, 2017, [Doc. 18-1 at 4], but this case was not filed until February 25, 2020, [Doc. 1], making it untimely.  Plaintiff's IIED claim is therefore also due to be dismissed.

IV.   <u>Conclusion</u>

For the reasons stated above, the Court **DENIES** the Motion for Extension, [Doc. 34],[2] and **RECOMMENDS** that the Motion to Dismiss, [Doc. 31], be **GRANTED IN PART AND DENIED IN PART**.  Specifically, the undersigned **RECOMMENDS** that Plaintiff's second amended complaint be dismissed with the exception of her FMLA claims.

**IT IS SO ORDERED AND RECOMMENDED**, this the 23rd day of July, 2021.

ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

---

[2]      The Court's recommendation would be the same even if it considered Plaintiff's brief in response to the pending motion to dismiss.  [Doc. 34-1].