IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DAVIDA JACKSON,

    **Plaintiff,**

v.

NORFOLK SOUTHERN RAILWAY
COMPANY,

    **Defendant.**

CIVIL ACTION FILE
No. 1:20-CV-00859-MLB-JEM

## UNITED STATES MAGISTRATE JUDGE'S
## FINAL REPORT & RECOMMENDATION

    Currently before the Court is Defendant's Motion for Summary Judgment (Doc. 79). For the following reasons, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment (Doc. 79) be **GRANTED**.

## I.    BACKGROUND

### A.    Procedural History

    Plaintiff initiated this action by filing a complaint on February 25, 2020. (Doc. 1.) On April 6, 2020, Plaintiff filed her First Amended Complaint. (Doc. 4.) On August 24, 2020, Defendant moved to dismiss Plaintiff's First Amended Complaint. (Doc. 15.) On September 24, 2020, Plaintiff then filed her first motion for leave to file a second amended complaint. (Doc. 18.) Hon. Alan J. Baverman, the magistrate judge previously referred to this case, denied Plaintiff's motion without prejudice on November 4, 2020. (Doc. 21.) Plaintiff then filed her second motion for leave to file a second amended complaint, (Doc. 23), which Judge

Baverman granted on January 22, 2021, (Doc. 43). Plaintiff's Second Amended Complaint then became the operative complaint, which Defendant moved to dismiss on February 4, 2021. (Doc. 31.) In his Non-Final Report & Recommendation (R&R) filed on July 23, 2021, (Doc. 37), Judge Baverman determined that Plaintiff had alleged claims against Defendant for violation of due process, breach of its Collective Bargaining Agreement, discrimination in violation of Title VII and the Age Discrimination in Employment Act, and intentional infliction of emotional distress, and he recommended dismissing them all. (*Id.* at 18, 23, 25.) However, Judge Baverman also determined that Plaintiff had articulated a claim under the Family and Medical Leave Act ("FMLA") as well, which Defendant had not moved to dismiss. (*Id.* at 18-20.) Judge Baverman therefore recommended that Plaintiff's FMLA claim should survive. (*Id.* at 20.) On September 7, 2021, District Judge Brown adopted the R&R in full. (Doc. 40 at 15.) Consequently, this cased proceeded on Plaintiff's FMLA claim alone.

Defendant filed its Motion for Summary Judgment on July 18, 2022. (Doc. 79.) Plaintiff responded on August 8, 2022, (Doc. 88, Plaintiff's "Response Brief"), to which Defendant replied on August 22, 2022, (Doc. 89, Defendant's "Reply Brief").

### B.    Undisputed Facts

Defendant hired Plaintiff in 1999 as a clerk in Ohio and then transferred her to Georgia in 2000. (Doc. 88-3, Plaintiff's Response to Defendant's Statement of Undisputed Material Facts, ¶ 1.) From August 2001 to her discharge in August

2017, Plaintiff "consistently requested, was granted, and utilized FMLA leave for various reasons." (*Id.* ¶ 22.) Specifically, she requested and received FMLA leave, both on an intermittent and continuous basis, 14 separate times. (*Id.* ¶¶ 25-41.) Plaintiff admits that Defendant never denied any of her FMLA leave requests, and that she never had issues taking or returning from FMLA leave. (*Id.* ¶¶ 48-49.)

In 2012, Plaintiff became a rate clerk. (*Id.* ¶ 2.) Plaintiff was directly supervised by Angela Fields, who reported to Danielle Lewis, who reported to Greg Ausborn. (*Id.* ¶¶ 5-7.) On April 13, 2016, Lewis emailed Plaintiff that Plaintiff had "marked off sick" for seven consecutive days and to "[p]lease be cognizant of this in the future as your presence here is valued." (Doc. 89-1, Defendant's Response to Plaintiff's Statement of Undisputed Material Facts, ¶¶ 10-11; Doc. 81-1 at 2.) These marked off dates included January 12; February 26 and 29; March 29; and April 1, 12, and 13, 2016. (Doc. 81-1 at 2.)  Though Plaintiff was approved for intermittent FMLA leave during this period, it was to care for her father rather than her own health. (Doc. 88-3 ¶ 36.) Later in the email, Lewis told Plaintiff to "[p]lease be sure to bring in a doctor's note for future mark offs." (*Id.*)

In July 2015, Ausborn was informed of concerns that Plaintiff was misusing her FMLA leave. (Doc. 88-3 ¶ 51.) Thereafter, Ausborn consulted Paul Young, his own supervisor, as well as Defendant's labor relations and legal departments regarding this suspicion and sought guidance on addressing it several times. (*Id.* ¶¶ 6, 53, 56, 59.) Defendant's internal police department

assigned an investigator on the matter, and on August 11, 2017, after Plaintiff requested and received leave for a doctor's appointment, the investigator observed her running personal errands and having a three-hour lunch instead. (*Id.* ¶¶ 60-66.) Ausborn reviewed the investigator's findings, and he also conducted his own investigation, from which he determined that Plaintiff had lied about attending a doctor's appointment. (*Id.* ¶¶ 67-69.) Ausborn also never received any documentation that Plaintiff had attended a doctor's appointment that day. (*Id.* ¶ 70.)[1] After August 11, 2017, Plaintiff did not make any other FMLA leave requests. (*Id.* ¶ 47.)

Based on his determination, Ausborn again contacted Defendant's legal and labor relations departments to discuss his findings, and they approved Plaintiff's employment termination. (*Id.* ¶¶ 71-72.) Plaintiff does not dispute that

---

[1] Plaintiff responds that this fact is, simply, "Denied." (*Id.*) But this response does not comply with the Local Rules of this Court, and Defendant's fact is therefore deemed admitted:

> This Court will deem each of the movant's facts as admitted unless the respondent: (i) directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number); (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise has failed to comply with the provisions set out in LR 56.1(B)(1).

LR 56.1(B)(2)(a)(1), NDGa.

Ausborn terminated her employment on August 25, 2017 because of her fraudulent misuse of FMLA leave. (*Id.* ¶¶ 73-74.) [2]

Plaintiff internally appealed the termination decision on August 28, 2017, and a hearing was held on September 6, 2017, during which the hearing officer upheld the decision. (*Id.* ¶¶ 76-77.) Thereafter, Plaintiff continued to appeal the decision, which continued to be upheld. (*Id.* ¶ 78.)

## II.   DISCUSSION

Defendant asserts several arguments in support of its motion for summary judgment, chiefly that Plaintiff's FMLA claims are barred by the relevant statute of limitations. (*See* Doc. 79-1 at 13-25.) Because the undersigned finds that Plaintiff's FMLA claims are barred by the statute of limitations, the Court need not reach an analysis on Defendant's other arguments. *See Lockaby v. Top Source Oil Analysis*, 998 F. Supp. 1469, 1471 (N.D. Ga. 1998).

### 1.   Summary Judgment Standard

Summary judgment is proper when no genuine issue as to any material fact is present, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[2] Here again, Plaintiff's response to Defendant's Statement of Undisputed Material Facts does not comply with the Local Rules in that it does not directly refute Defendant's fact with concise responses supported by specific citations, does not state a valid objection to the admissibility of Defendant's fact, and does not point out that Defendant's citation does not support the fact or is otherwise immaterial. *See* LR 56.1(B)(2)(a)(1), NDGa.

A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The movant bears the burden of "informing the court of the basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue of material fact." *Rice-Lamar v. City of Ft. Lauderdale, Fla.*, 232 F.3d 836, 840 (11th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The movant may also meet its burden by identifying an absence of evidence to support an element of the case on which the nonmovant bears the burden of proof. *Celotex*, 477 U.S. at 325. If the movant meets its burden, then the nonmovant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The nonmovant must "go beyond the pleadings" and present competent evidence in the form of affidavits, depositions, admissions, and the like, designating "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. "The mere existence of a scintilla of evidence" supporting the nonmovant's case is insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252.

The Court must view the evidence and factual inferences in the light most favorable to the nonmovant. *See United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc). To the extent that material facts are genuinely in dispute, the Court must resolve the disputes in the nonmovant's favor. *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Vaughan v. Cox*, 343 F.3d 1323, 1326 n.1 (11th Cir. 2003). If the record does not blatantly contradict the

nonmovant's version of events, the court must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson*, 477 U.S. at 252; *accord EPL, Inc. v. USA Fed. Credit Union*, 173 F.3d 1356, 1362 (11th Cir. 1999).

### 2.    Applicable Law

Under the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period […b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The FMLA "prohibits employers from interfering with, restraining, or denying 'the exercise of or the attempt to exercise' any rights guaranteed under the Act." *McCarroll v. Somerby of Mobile, LLC*, 595 F. App'x 897, 900 (11th Cir. Dec. 12, 2014) (quoting 29 U.S.C. § 2615(a)(1)). Consequently, an employee may bring a claim against her employer for interference or retaliation in violation of the FMLA. *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1247 (11th Cir. 2015). If bringing an interference claim, the employee must show that she was "entitled to a benefit under the FMLA and was denied that benefit." *Id.* If bringing a retaliation claim, the employee must show that her employer intentionally discriminated against her "because [s]he engaged in an activity protected by the [FMLA]." *Pereda v. Brookdale Senior Living Cmtys., Inc.*, 666 F.3d 1269, 1272 (11th Cir. 2012).

The FMLA has two limitations periods in which an employee must file her claim. *See* 29 U.S.C. § 2617(c)(1)-(2). Ordinarily, the employee must file her claim "not later than 2 years after the date of the last event constituting the alleged

violation for which the action is brought." 29 U.S.C. § 2617(c)(1). But where an action is "brought for a willful violation," it must be filed "within 3 years of the date of the last event constituting the alleged violation for which such action is brought." 29 U.S.C. § 2617(c)(2). "Willful" is defined neither in the FMLA nor by the Supreme Court nor by the Eleventh Circuit. *Henry v. State Farm Fire & Cas. Co.*, No. 1:18-cv-005907-MLB-LTW, 2020 U.S. Dist. LEXIS 145133, at *24 (N.D. Ga. May 20, 2020) (citing *Smith v. St. Joseph's/Candler Health Sys., Inc.*, 770 F. App'x 523, 526 (11th Cir. 2019)). Courts in this Circuit, however, have imported the definition of "willful" set forth by the Supreme Court in the Fair Labor Standards Act context in *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988). *Id.* (citing *Smith*, 770 F. App'x at 526-27; *Wen Liu v. Univ. of Miami, Sch. of Med.*, 138 F. Supp. 3d 1360, 1373-74 (S.D. Fla. July 21, 2015); *Copeland v. Metro. Atlanta Rapid Transit Auth.*, No. 1:08-cv-1300-WSD, 2011 WL 13174550, at *2 (N.D. Ga. May 3, 2011); *Majors v. Morgan Tire & Auto, Inc.*, No. CV 104-047, 2005 WL 2709634, at *11 (S.D. Ga. Oct. 21, 2005)). Under the borrowed *McLaughlin* definition, an FMLA violation is willful "if 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'" *Id.* (quoting *McLaughlin*, 486 U.S. at 133). In other words, "willful" means not merely negligent, but "voluntary, deliberate, and intentional." *McLaughlin*, 486 U.S. at 133. "[A] 'willful' FMLA violation is distinguished not by the willfulness of the adverse employment action, but by the willfulness of the violation itself." *Smith*, 2018 U.S. Dist. LEXIS 71313, at *4 (citing *Liu*, 138 F. Supp. at 1374). "That is, an employer must take an action *despite* recognizing that it violates the FMLA or

with reckless disregard for whether it does." *Id.* "[P]laintiffs are 'required to demonstrate willfulness to avoid summary judgment where [they] are bringing FMLA claims based on conduct greater than two years after the alleged conduct occurred.'" *Id.* at *5 (citing *Copeland v. Metro. Atlanta Rapid Transit Auth.*, 2010 U.S. Dist. LEXIS 149401, 2010 WL 11500065, at *7 (N.D. Ga. Oct. 8, 2010)).

Raising the statute of limitations is an affirmative defense. Fed. R. Civ. P. 8(c). Consequently, Defendant carries the initial burden of showing that the defense is applicable. *Steward v. Int'l Longshoreman's Ass'n, Local No. 1408*, 306 F. App'x 527, 530 (11th Cir. 2009); *Blue Cross & Blue Shield of Alabama v. Weitz*, 913 F.2d 1544, 1552 (11th Cir. 1990). Once Defendant carries that burden, then Plaintiff must demonstrate either that the two-year period was tolled or that her claims were subject to the three-year period because Defendant acted willfully. *See Brown v. Pub. Health Tr.*, No. 1:18-cv-21457-UU, 2018 U.S. Dist. LEXIS 236741, at *17 (S.D. Fla. Dec. 17, 2018) (citing *Viellot-Philistin v. Pub. Health Tr.*, No. 02-20415-CIV-MARRA, 2004 U.S. Dist. LEXIS 26537, at *5 (S.D. Fla. Mar. 5, 2004), aff'd sub nom. *Viellot-Philistin v. Pub. Health*, 125 F. App'x 982 (11th Cir. 2004)).

### 3.    Analysis

Defendant contends that Plaintiff's claims for FMLA interference and retaliation cannot survive summary judgment because they are barred by the FMLA's two-year statute of limitations. (Doc. 79-1 at 10.) Defendant asserts that the last event constituting the alleged violation for which Plaintiff's action is brought (the "triggering date") is Plaintiff's discharge on August 25, 2017. (*Id.*) Therefore, her original complaint, filed two and a half years later, is untimely.

(*Id.*) Defendant further argues that Plaintiff has neither alleged nor established that Defendant willfully violated the FMLA, so the three-year period is inapplicable. (*Id.* at 10-14.) Contrarily, Plaintiff contends that her claims are not time-barred because, she says, the "triggering date" is January 25, 2020, once she had "exhausted all of her internal remedies" to challenge her discharge. (Doc. 88-1 at 19-20.) Therefore, her original complaint, filed one month later on February 25, 2020, was timely. (*Id.*) Plaintiff further argues that she has proven Defendant acted willfully, and thus her claims are subject to the FMLA's three-year statute of limitations period. (*Id.* at 20-23.) The undersigned will address each point in turn.

###### i.    *Triggering Event*

To determine the date on which Plaintiff was required to bring her claims, the undersigned must determine the appropriate triggering event. Defendant argues that the triggering event is Plaintiff's termination of employment on August 25, 2017, two and a half years before she filed her initial complaint on February 25, 2020. (Doc. 79-1 at 10; Doc. 89 at 4.) Plaintiff argues that the triggering event occurred on January 25, 2020, when she finished exhausting her internal remedies with Defendant, just one month before she filed her initial complaint. (Doc. 88-1 at 20.) This argument, however, is unavailing.

Plaintiff has offered no authority for her argument that the statute of limitations begins running only once all internal appeals processes have been exhausted, and this Court has found none. Instead, courts in this District hold that the statute of limitations for an FMLA claim begins to accrue when a

materially adverse action, such as termination, occurs. *See Jacobs v. Lockheed Martin Corp.*, No. 1:14-CV-03575-CAP-AJB, 2016 U.S. Dist. LEXIS 196502, at *33 (N.D. Ga. July 13, 2016) (citing *Demers v. Adams Homes of Nw. Fla., Inc.*, 321 F. App'x 847, 849 (11th Cir. Mar. 20, 2009); *Floyd v. Home Depot U.S.A., Inc.*, 274 F. App'x 763, 765 (11th Cir. Apr. 17, 2008); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1283-84 (11th Cir. 1999)).[3] It is undisputed that Plaintiff was discharged on August 25, 2017, and her termination of employment is the materially adverse action which Plaintiff herself describes as the "initial or first" FMLA violation committed by Defendant. (*See* Doc. 88-1 at 20); *see Jacobs*, 2016 U.S. Dist. LEXIS 196502, at *33 (listing termination of employment as materially adverse action). Plaintiff's claims therefore began to accrue on August 25, 2017.

Defendant has carried its burden of showing that its statute of limitations defense is applicable to Plaintiff's claims because Plaintiff was discharged on August 25, 2017, (Doc. 88-3 ¶ 74), and she filed her initial complaint two and a

---

[3] Other courts in the Eleventh Circuit have stated that accrual begins when the employee first becomes aware of an FMLA violation, such as denial of leave. *See Aguiar v. Dr. Pepper/Seven Up Inc.*, No. 20-21834-Civ-TORRES, 2021 U.S. Dist. LEXIS 32490, at *8 (S.D. Fla. Feb. 19, 2021) (citing *Barrett v. Illinois Dep't of Corr.*, 803 F.3d 893, 899 (7th Cir. 2015); *Hanger v. Lake Cty.*, 390 F.3d 579, 583 (8th Cir. 2004)). Under this standard, the triggering date for Plaintiff's interference claim would be April 13, 2016, the date on which Defendant sent the email that Plaintiff alleges was an act of FMLA interference. Consequently, she would have had to file her claim on or before April 13, 2018. The triggering date for her retaliation claim would be August 25, 2017, the date of her discharge—the only action Plaintiff identifies as being retaliatory. (*See* Doc. 88-1 at 26.) Consequently, she would have had to file her retaliation claim on or before August 26, 2019. Because courts in this District have articulated a different standard, however, this Court will not stray from it.

half years later on February 25, 2020, (Doc. 1). For Plaintiff's claims to survive, she must have shown either that the two-year period was somehow tolled or that the three-year period applies because Defendant acted willfully.

*ii.*     ***Tolling***

It is unclear whether Plaintiff argues that the two-year period was tolled by her continuous attempts to appeal her discharge internally. (*See* Doc. 88-1 at 19-20.) To the extent she does, that argument also is unavailing. The Supreme Court holds: "[T]he pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods." *Del. State Coll. v. Ricks*, 449 U.S. 250, 261 (1980). To succeed on this theory, Plaintiff would have to show that Defendant's failure to reinstate her each time she appealed was a discrete violation of the FMLA:

> [A] failure to rehire can only count as an adverse action when there is a '*new and discrete act* of discrimination in the refusal to rehire itself.' A continued refusal to rehire, on its own, 'cannot resurrect the old discriminatory act.' Indeed, this requirement of showing a new discrete act of discrimination is quite sensible; '[o]therwise, a potential plaintiff could always circumvent the [statute of] limitations by reapplying for employment.' […] Claiming that yet another request for reconsideration somehow resets the clock and counts as a new, discrete act would utterly eviscerate any statute of limitations.

*Atchison v. Bd. of Regents of the Univ. Sys. of Ga.*, 802 F. App'x 495, 505 (11th Cir. 2020)(quoting *Burnam v. Amoco Container Co.*, 755 F.2d 893, 894 (11th Cir. 1985)). Plaintiff did not argue or provide any factual support to show that Defendant upholding its termination decision from August 25, 2017, was a discrete discriminatory action. (*See* Doc. 88-1 at 20, 24-25.) Rather, Plaintiff argues that

12

Defendant's failure to reinstate her was a violation of 29 CFR § 825.218(a), which states that "to deny restoration to a key employee, an employer must determine that the restoration of the employee to employment will cause substantial and grievous economic injury to the operations of the employer[.]" (Doc. 88-1 at 24-25); *see* 29 U.S.C. § 2614(b)(1). However, this argument is inapposite. "[A]n employee has a right *following FMLA leave* to be restored to the same position or to an equivalent position[.]" *Jones v. Aaron's Inc.*, 748 F. App'x 907, 919 (11th Cir. 2018) (citing 29 U.S.C. § 2614(a)(1)(B)) (emphasis added). Plaintiff asked to be reinstated following her discharge, not to be restored after any FMLA leave. In any event, Plaintiff has not demonstrated that her claims were tolled.

### iii.    Willfulness

In its argument on willfulness, Defendant first points to the fact that Plaintiff did not allege in any iteration of her complaint that Defendant willfully violated the FMLA. (Doc. 79-1 at 10-14.) Defendant is correct. Plaintiff was required to allege in her complaint that Defendant knew or recklessly disregarded that it was violating the FMLA for the three-year period to apply. *See Brown v. Pub. Health Tr.*, No. 1:18-cv-21457-UU, 2018 U.S. Dist. LEXIS 236741, at *18-19 (S.D. Fla. Dec. 17, 2018) (citing *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). Plaintiff did not do so. (*See* Doc. 43.) Rather, she argues for the first time on summary judgment that Defendant willfully violated the FMLA, but Plaintiff "may not amend her complaint through argument in a brief opposing summary judgment." *Gilmour*, 382 F.3d at 1315. On this basis, the undersigned concludes that Plaintiff's claims remain subject to the two-year

13

statute of limitations. *See Brown*, 2018 U.S. Dist. LEXIS 236741, at *18-19 ("Plaintiff raises this argument for the first time in response to summary judgment as her complaint contains not a single allegation that any of Defendant's FMLA violations were willful. […] The time for amending the pleadings is long past and thus, the Court agrees with Defendant that the two-year statute of limitations applies[.]"). For the sake of thoroughness, however, the undersigned will address whether Plaintiff has established that Defendant willfully interfered with her rights under the FMLA or retaliated against her in violation of the FMLA such that her claims should be subject to the three-year limitations period.

### a.    Plaintiff's Interference Claim

Plaintiff argues that Defendant willfully interfered with her rights under the FMLA "by discouraging her from exercising her FMLA rights to take days needed for her serious health condition." (Doc. 88-1 at 23-24.) Plaintiff points to one "April 13th email" in which Defendant "suggest[ed…] that if plaintiff did not alter her use of FML, her job was in jeopardy" and "request[ed] a doctor's note after each FML appointment," which Defendant "knew […] was unlawful." (Doc. 88-1 at 22.) Plaintiff does not cite to any facts supported by the record to buttress her argument. (Doc. 88-1 at 22-23; *see also* Doc. 89-1 ¶¶ 10-11.) Indeed, the record reveals that the "April 13th email" does not address FMLA leave at all; instead, it addresses only sick leave. (*See* Doc. 81-1 at 2.) In that email, sent on April 13, 2016, Defendant tells Plaintiff that she "marked off sick" for seven consecutive days and to "[p]lease be cognizant of this in the future as your presence here is valued." (*Id.*) These marked off dates included January 12;

February 26 and 29; March 29; and April 1, 12, and 13, 2016. (*Id*.) Though Plaintiff was approved for intermittent FMLA leave during this period, it was to care for her father rather than her own health. (Doc. 88-3 ¶ 36.) These facts thus indicate that Plaintiff was not taking FMLA leave on the dates she marked off as "sick." Later in the email, Defendant tells Plaintiff to "[p]lease be sure to bring in a doctor's note for future mark offs." (Doc. 81-1 at 2.) Again, this email refers only to Plaintiff's "sick" days, not FMLA leave days. (*See id*.) Plaintiff has not shown otherwise. The undersigned therefore does not find this email to indicate any sort of willful behavior by Defendant aimed at discouraging Plaintiff from using her approved FMLA leave.

Moreover, the undisputed facts belie Plaintiff's contention that Defendant willfully interfered with her ability to take FMLA leave. Indeed, Plaintiff admits that "[f]rom August of 2001 to her termination from [Defendant] in August of 2017, [she] consistently requested, was granted, and utilized FMLA leave for various reasons." (Doc. 88-3 ¶ 22.) Specifically, she requested and received FMLA leave, both on an intermittent and continuous basis, 14 separate times. (Doc. 88-3 ¶¶ 25-41.) Plaintiff also admits that Defendant never denied any of her FMLA leave requests, and that she never had issues taking or returning from FMLA leave. (Doc. 88-3 ¶¶ 48-49.)

Plaintiff further argues that Defendant engaged in willful interference by failing to reinstate her employment after she challenged her termination. (Doc. 88-1 at 22.) The only support Plaintiff offers to show that this adverse action was willful is her statement that "[t]he wealth of knowledge that Defendant possesses

as it relates to FMLA means that it knew of and showed reckless disregard and knew that its actions were prohibited by [the FMLA] when it did not reinstate Plaintiff." (Doc. 88-1 at 22 (citing 29 U.S.C. § 825.218(a).) This conclusory statement is not enough to show that Defendant willfully violated the FMLA. *Brown*, 2018 U.S. Dist. LEXIS 236741, at *19-20 ("Plaintiff's conclusory response is insufficient to carry her heavy burden of demonstrating that Defendant's violation of the FMLA was willful.") (citing *Copeland v. MARTA*, No. 1:08-cv-1300-WSD-ECS, 2010 U.S. Dist. LEXIS 149401, at *19 (N.D. Ga. Oct. 8, 2010) ("The standard to establish willfulness is a high one"); *Katoula v. Detroit Entm't, LLC*, 557 F. App'x 496, 498 (6th Cir. 2014) (explaining that in the FMLA context, a plaintiff "must do more than make the conclusory assertion that a defendant acted willfully.")). Indeed, simply because an employer knows about the FMLA does not automatically mean that any FMLA violation committed by the employer is willful. *See McLaughlin*, 486 U.S. at 132-33.

Accordingly, the undersigned finds that Plaintiff's FMLA interference claim is subject to the two-year statute of limitations, and it is therefore time-barred.

### b.    Plaintiff's Retaliation Claim

Plaintiff argues that Defendant willfully retaliated against her by terminating her employment. (Doc. 88-1 at 20.) However, Plaintiff does not offer a single citation to the record or any legal argument to support this contention. (*See id*.) Moreover, the undisputed facts show that Defendant believed that Plaintiff was misusing her FMLA leave for several years prior to her discharge,

(Doc. 88-3 ¶ 51); that Plaintiff's manager, Ausborn, consulted Defendant's labor relations department and legal department regarding this suspicion and sought guidance on addressing it several times, (*id.* ¶¶ 53, 56, 59); and that in 2017 Defendant's internal police department investigated whether Plaintiff was abusing her FMLA leave, (*id.* ¶¶ 60-66). Specifically, on the morning of August 11, 2017, Plaintiff requested and received time for a doctor's appointment that day but was observed by one of Defendant's investigators to be running personal errands and having a three-hour lunch instead. (*Id.*) Ausborn reviewed this agent's findings, and he also conducted his own detailed investigation, from which he determined that Plaintiff had lied about attending a doctor's appointment. (*Id.* ¶¶ 67-69.) Ausborn also never received any documentation that Plaintiff had attended a doctor's appointment that day. (*Id.* ¶ 70.) Based on his determination, Ausborn again contacted Defendant's legal and labor relations departments to discuss his findings and decision to terminate Plaintiff's employment, which they approved. (*Id.* ¶¶ 71-72.) Plaintiff does not genuinely dispute that Ausborn terminated her employment on August 25, 2017, because of her fraudulent misuse of FMLA leave. (*Id.* ¶¶ 73-74.) Plaintiff has failed to assert any supported facts or arguments to show that Defendant willfully violated the FMLA by terminating her employment. (*See* Docs. 88-1, 89-1.)

Accordingly, the undersigned finds that Plaintiff's FMLA retaliation claim remains subject to the two-year statute of limitations, and it is therefore time-barred.

### III.    CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment (Doc. 79) be **GRANTED**.

The Clerk is **DIRECTED** to terminate the referral to the undersigned Magistrate Judge.

**IT IS SO ORDERED AND DIRECTED** this 24th day of October 2022.

_____
J. ELIZABETH McBATH
UNITED STATES MAGISTRATE JUDGE