## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Davida Jackson,

                Plaintiff,

                            Case No. 1:20-cv-859-MLB

v.

Norfolk Southern Railway
Company,

                Defendant.

_____/

## OPINION & ORDER

This is an FMLA case. Magistrate Judge McBath issued a Report and Recommendation ("R&R") saying this Court should deny Defendant's Motion for Judgment on the Pleadings as untimely. (Dkt. 90.) Neither party filed objections. She also issued an R&R saying the Court should grant Defendant's Motion for Summary Judgment. (Dkt. 92.) Plaintiff objects. (Dkt. 95.) The Court adopts both R&Rs in full.

## I.   Standard

A district court must "make a de novo determination of those portions of [an R&R] to which objection is made." *See* 28 U.S.C. §

636(b)(1).  Any such objection "must specifically identify the portions of the [R&R] to which objection is made and the specific basis for objection." *McCullars v. Comm'r, Soc. Sec. Admin.*, 825 F. App'x 685, 694 (11th Cir. 2020); *see United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009) ("[A] party that wishes to preserve its objection must clearly advise the district court and pinpoint the specific findings that the party disagrees with.").  "Frivolous, conclus[ory], or general objections need not be considered by the district court." *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988).  "It is reasonable to place upon the parties the duty to pinpoint those portions of the magistrate's report that the district court must specially consider" because doing so "facilitates the opportunity for district judges to spend more time on matters actually contested and produces a result compatible with the purposes of the Magistrates Act." *Schultz*, 565 F.3d at 1361.

"It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985); *see Kimber v. Jones*, 2013 WL 1346730, at *1 n.1 (N.D. Ala. Apr. 3, 2013) ("The court notes

that it was not required to conduct an independent review of the Report and Recommendation in this case because no party has filed objections."). And, in most cases, "[a] party failing to object to [an R&R] waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *McGriff v. Comm'r, Soc. Sec. Admin.*, 654 F. App'x 469, 472 (11th Cir. 2016). Ultimately, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

## II.   Motion for Judgment on the Pleadings

Neither party objected to the Magistrate Judge's R&R recommending the Court deny Defendant's Motion for Judgment on the Pleadings as untimely. Even assuming the Court must review that R&R for plain error, the Court sees no such error in the Magistrate Judge's conclusions.

Defendant moved to dismiss the operative complaint in this case— the Second Amended Complaint—on February 4, 2021. (Dkt. 31.) On July 23, Magistrate Judge Baverman (who was previously assigned to the case) issued an R&R recommending the Court dismiss all of Plaintiff's claims except her claim that Defendant violated the Family Medical

Leave Act.  (Dkt. 37 at 18, 20, 22, 25.)  This Court adopted Magistrate Judge Baverman's R&R on September 7.  (Dkt. 40.)  On March 11, 2022—after the parties had been engaged in discovery for about four months—Defendant filed its Motion for Judgment on the Pleadings.  (Dkt. 64.)

Plaintiff says Defendant's motion is untimely.  (Dkt. 68 at 6.) Defendant concedes that point but offers two reasons why the Court should disregard the time limit: (1) "given the time allowed for Plaintiff to amend her Complaint under the Scheduling Order, Defendant reasoned that it would be premature and improper to bring this motion prior to the close of the pleadings," and (2) Defendant's motion is dispositive, so considering its merits promotes judicial economy.  (Dkt. 72 at 2 n.1.)  The Magistrate Judge concluded Defendant's motion was untimely and that Defendant's reasons for its tardiness were not sufficient to waive the requirements of the Court's Local Rules.  (Dkt. 90 at 3–4.)  The Court agrees.

A party may move for judgment on the pleadings after a complaint and answer have been filed but before doing so would delay trial.  *See* Fed. R. Civ. P. 12(c).  Under the Local Rules, such a motion must be filed within 30 days after the beginning of discovery unless the Court extends

the deadline.  *See* LR 7.1(A)(2) and 7.2, NDGa.  Defendant never asked the Court to extend the deadline.  So, its motion would have been timely only if Defendant filed it within 30 days after the beginning of discovery. That happened on October 21, 2021 (30 days after Defendant's answer to the Second Amended Complaint).  *See* LR 26.2(A), NDGa.  This means Defendant's motion was due by November 22, 2021 at the latest. Defendant did not file it until March 11, 2022, nearly four months after discovery began and more than three months after the deadline imposed by the Local Rules.  Given that Defendant never sought an extension of the deadline and that it waited until nearly five months after the pleadings closed to argue Plaintiff's pleading was inadequate, the Court finds it appropriate to decline to consider Defendant's motion due to its "fail[ure] to conform with the requirements of the Local Rules."  *See Monfort v. CKCG Health Care Servs.*, 2020 WL 9599954, at *7 (N.D. Ga. May 20, 2020).

## III.  Motion for Summary Judgment

Plaintiff's only remaining claim is that Defendant violated the FMLA. (Dkt. 40 at 15.)  Defendant filed a Motion for Summary Judgment on that claim.  (Dkt. 79.)  The Magistrate Judge recommends the Court

grant that motion. (Dkt. 92.) Plaintiff filed objections to the R&R (Dkt. 95) and Defendant responded (Dkt. 98).

## A.   Facts

Plaintiff worked for Defendant in several different positions from 1999 until 2017. (Dkt. 88-3 ¶ 1, 2, 22.) During that time, Plaintiff "consistently requested, was granted, and utilized FMLA leave for various reasons." (*Id.* ¶ 22.) Specifically, she requested and received FMLA leave—both on an intermittent and continuous basis—14 separate times. (*Id.* ¶¶ 25–41.)[1] In fact, Defendant never denied any of Plaintiff's FMLA leave requests, and she never had any issues taking or returning from leave. (*Id.* ¶¶ 48–49.)

In July 2015, Greg Ausborn (one of Plaintiff's supervisors) learned that Plaintiff's other supervisors had "an ongoing concern" that Plaintiff

---

[1] In its statement of material facts, Defendant listed the times when Plaintiff requested and received each segment of FMLA leave. (Dkt. 88-3 ¶¶ 25–41.) Defendant also cited record evidence for each segment. (*Id.*) Plaintiff admitted many of the allegations but, for others, said the facts are "too remote in time to admit or deny." (*See e.g.* Dkt 88-3 at ¶¶ 27-30.) She cited no evidence. The Court deems those facts admitted. *See* L.R. 56.1(B)(2)(a)(2), NDGa ("This Court will deem each of the movant's facts admitted unless the respondent . . . directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number)[.]").

was committing "a pattern of FML misuse." (Dkt. 88-3 ¶ 51.) He then noticed Plaintiff often requested FML leave on days before or after days she was not scheduled to work. (*Id. at* ¶ 52.) Ausborn talked several times with his supervisors and Defendant's legal departments about his suspicion. (*Id.* ¶¶ 6, 53, 56, 59.) The legal department investigated Plaintiff's conduct but reached no formal conclusion. (*Id.* ¶ 54.)

On April 13, 2016, Danielle Lewis (another one of Plaintiff's supervisors) emailed Plaintiff saying she had "marked off sick" seven days and that the company considered those days to be "consecutive." (Dkt. 81-1 at 2.) Lewis listed seven dates (between January 12 and April 13, 2016) on which Plaintiff took sick leave—not FMLA leave. (Dkt. 89-1 ¶¶ 10–11.) Lewis also warned Plaintiff, telling her "[p]lease be cognizant of this in the future as your presence here is valued. Please be sure to bring in a doctor's note for future mark offs." (Dkts. 81-1 at 2, 89-1 ¶¶ 10–11.) During this same time period, Plaintiff was approved for intermittent FMLA leave to care for her father. (Dkt. 88-3 ¶ 36.)

Plaintiff continued to take FMLA leave throughout 2016 and 2017 "habitually on Fridays, and specifically for doctor's appointments,

without advanced notice." (*Id.* ¶ 55.)² In 2017, Ausborn, his supervisor, and Defendant's legal department "coordinated opening a formal investigation on Plaintiff's use of FML." (*Id.* ¶ 59.) Defendant's internal police department assigned an investigator to the matter. (*Id.* ¶ 60.)

During this time, Plaintiff was assigned a shift schedule of Monday through Friday from 6:15 a.m. until 3:15 p.m. (*Id.* at 4.) On August 11, 2017, Plaintiff notified her supervisor that she needed to take FMLA leave that morning for a doctor's appointment and would be out for the rest of the day. (*Id.*) Defendant approved her request. (*Id.* at ¶ 63.) The investigator followed Plaintiff that day starting at around 9:55 a.m. when Plaintiff was at her home and observed Plaintiff running personal

---

² Plaintiff responded to this fact—along with many others—as simply "Denied." (Dkt. 88-3 ¶ 55.) That was insufficient so the Magistrate Judge deemed them admitted. *See* L.R. 56.1(B)(2)(a)(2). Plaintiff now attacks the Magistrate Judge's conclusion by citing evidence she attaches to her objections to the R&R. (Dkt. 95 at 5–7.) Plaintiff, however, does not cite where this evidence can be found in the record as required by the Local Rules. And even if she did, the Court need not now consider it given that she failed to present it to the Magistrate Judge and offers no good reason for having failing to do so. *See Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009) ("[A] district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge."). The Magistrate Judge was correct in deeming these facts admitted. This Court does the same.

errands and having a three-hour lunch. (*Id.* ¶¶ 60–65.) At no point did the investigator see Plaintiff attend a doctor's appointment. In responding to Defendant's statement of material facts, Plaintiff claims the investigator "misstate[d] the facts and [left] out important information," including most importantly omitting "the fact that plaintiff left work [that morning] and went straight to her doctor's appointment and had blood drawn" before going home. (*Id.* at ¶ 65.) Plaintiff, however, cites no record evidence for this assertion so the Court does not consider it. *See* L.R. 56.1(B)(2)(a)(2).

Ausborn reviewed the investigator's findings, corroborated them with his own investigation, and concluded Plaintiff had lied about attending a doctor's appointment. (*Id.* ¶¶ 67–69.) Based on his conclusion, Ausborn contacted Defendant's labor relations and legal departments to discuss his findings. (*Id.* ¶ 71.) Someone from that department approved his decision to terminate Plaintiff. (*Id.* ¶ 72.) He did that on August 25, 2017 for "fraudulent misuse of her FML, for dishonesty in marking off under false pretenses." (*Id.* ¶¶ 73–74.) Ausborn never received any document or evidence suggesting Plaintiff went to a doctor's appointment on August 11, 2017 before he terminated

her employment on August 25, 2017.  (*Id.* at ¶ 70.)[3]

A couple of days after her termination, Plaintiff internally appealed her discharge.  (*Id.* ¶ 76.)  Defendant held a formal hearing.  (*Id.* ¶ 77.) The hearing officer upheld Plaintiff's termination, concluding the evidence presented supported Plaintiff's guilt and "the discipline asserted was proper."  (*Id.* ¶ 77.)  Plaintiff continued to appeal but was unsuccessful.  (*Id.* ¶ 78.)  Plaintiff claims—without citing any evidence— that she finished exhausting her internal appeals on January 25, 2020. (Dkt. 88-1 at 20.)  Plaintiff filed this litigation on February 25, 2020. (Dkt. 1.)

## B.    Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving for summary judgment bears the initial burden of showing the court, by reference to materials in the record, that there is no genuine

---

[3] Plaintiff responded to this assertion of undisputed material fact by simply saying "denied." (Dkt. 88-3 at ¶ 70.)  As already explained several times, the Court deems the fact admitted under the Court's Local Rules. *See* L.R. 56.1(B)(2)(a)(2).

dispute as to any material fact. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The nonmoving party then has the burden of showing that summary judgment is improper by coming forward with "specific facts" showing there is a genuine dispute for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing Fed. R. Civ. P. 56(e)). Ultimately, there is no "genuine issue for trial" when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Id.* (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). The Court conducts a de novo review to those parts of the R&R to which Plaintiff objects. *See* 28 U.S.C. § 636(b)(1).

### C.   Discussion

Defendant says Plaintiff's FMLA claim is time-barred because she did not bring it within two years after her termination on August 25, 2017, as required by the Act. (Dkt. 79-1 at 13–25.) Plaintiff initially argued Defendant was wrong because the triggering event for the limitations period should have been the exhaustion of her internal appeals (January 25, 2020) rather than her termination (August 25,

11

2017). (Dkt. 88-1 at 19–20.) She also said—for the first time—that the statute's three-year limitations period should apply because Defendant acted willfully. (*Id.* at 20–23.) The Magistrate Judge rejected Plaintiff's arguments and determined her claims are barred. (Dkt. 92 at 13–17.) Specifically, Magistrate Judge McBath concluded Plaintiff's termination was the triggering event and Plaintiff filed her complaint more than two years later. (*Id.* at 13.) She also found that, because Plaintiff did not allege Defendant's willfulness in her complaint but instead raised it for the first time at summary judgment, she was not entitled to the three-year limitations period. (*Id.* at 13–14.) "For the sake of thoroughness, however," the Magistrate Judge still examined Plaintiff's willfulness argument and concluded no reasonable jury could find Defendant willfully violated the FMLA. (*Id.* at 14–17.)

Plaintiff objects. (Dkt. 95.) She now concedes "the Magistrate's determination that the 2-year statute of limitation ended prior to Plaintiff's instant action filed in February 2020." (*Id.* at 2.) But she continues to argue she is entitled to the three-year limitations period "because Defendant knew and showed reckless disregard for violating the FMLA when it terminated [her] for her use of FML and interfered with

12

her FML when she was not restored to her position." (*Id.*)  She asks the Court to ignore the purported "technical and other errors" she made in responding to Defendant's motion (presumably her failure to admit evidence or provide citations to the record in regard to several material facts) and to find there are genuine issues of material fact regarding whether Defendant willfully violated the FMLA.  (*Id.* at 1–2.)

Under the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D). The statute "prohibits employers from interfering with, restraining, or denying 'the exercise of or the attempt to exercise' any rights guaranteed under the Act." *McCarroll v. Somerby of Mobile, LLC*, 595 F. App'x 897, 900 (11th Cir. 2014) (quoting 29 U.S.C. § 2615(a)(1)).  To prove interference, the employee must show he or she "was entitled to a benefit under the FMLA and was denied that benefit." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1247 (11th Cir. 2015).  To prove retaliation, the employee must show his or her employer intentionally discriminated against the employee "because he [or she] engaged in an

activity protected by the [FMLA]." *Pereda v. Brookdale Senior Living Communities, Inc.*, 666 F.3d 1269, 1272 (11th Cir. 2012).

The FMLA has two limitations periods in which an employee must file his or her claim. *See* 29 U.S.C. § 2617(c)(1)–(2). For simple violations, the employee must do so "not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought." 29 U.S.C. § 2617(c)(1). But where the employee alleges a "willful violation," he or she must bring the claim "within 3 years of the date of the last event constituting the alleged violation for which such action is brought." 29 U.S.C. § 2617(c)(2). An employer acts willfully when "it 'knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'" *Harkleroad v. Wayne Memorial Hosp.*, 2022 WL 1307086, at *2 (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).

As an initial matter, the Court agrees with the Magistrate Judge that Plaintiff cannot now—for the first time at summary judgment—argue Defendant willfully violated the FMLA. A plaintiff "may not amend [his or] her complaint through argument in a brief opposing summary judgment." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312,

14

1315 (11th Cir. 2015); *see also Cooley v. Great Southern Wood Preserving*, 138 F. App'x 149, 153 (11th Cir. 2005) (issues not raised in pleadings cannot be raised at summary judgment if opposing party objects to their assertion "without the filing of a supplemental pleading"). So, Plaintiff's claim is subject to—and clearly falls outside of—the two-year statute of limitations. *See Brown v. Pub. Health Tr. of Miami-Dade Cty.*, 2018 WL 10760075, at *7 (S.D. Fla. Dec. 18, 2018) (finding two-year statute of limitations applied where plaintiff raised willfulness argument "for the first time in response to summary judgment as her complaint contains not a single allegation that any of Defendant's FMLA violations were willful").

Plaintiff says her complaint "puts Defendant on notice that Plaintiff is alleging that it has unlawfully violated the [FMLA]," which she argues is enough—along with the "surrounding" facts—to "support a claim for willfulness." (Dkt. 95 at 8–9.) Not so. The FMLA clearly differentiates between simple violations and those that are willful. Indeed, the different limitations periods are a prime example. So, it is not enough that Plaintiff notified Defendant she was accusing it of violating the FMLA. And the facts she alleges do not demonstrate willfulness on their

face.  To the contrary, they show Defendant took steps to investigate Plaintiff's use of FMLA leave before making any decisions that would impact her rights under the Act.  (Dkt. 43 ¶ 15.)

## 1.   Interference

Even if Plaintiff could raise this issue now, there is no evidence Defendant willfully violated the FMLA.  Plaintiff argues Defendant did so "by discouraging her from exercising her FMLA to take days needed for her serious health condition."  (Dkt. 88-1 at 23–24.)  Specifically, she points to the April 13, 2016 email from Lewis, in which she says Defendant "suggest[ed] . . . that, if plaintiff did not alter her use of FML, her job was in jeopardy" and "request[ed] a doctor's note after each FML appointment," which Defendant "knew . . . was unlawful."  (*Id.* at 22.) The Magistrate Judge noted Plaintiff did "not cite [] any facts supported by the record to buttress her argument" and that instead, "the record reveals that the 'April 13th email' does not address FMLA at all; instead, it addresses only sick leave."  (Dkt. 92 at 14.)

Plaintiff's only objection to the Magistrate Judge's conclusion is that she did not take "consecutive" days of sick leave as suggested by the email.  (Dkt. 95 at 5.)  But whether Plaintiff's sick leave was consecutive

is immaterial to the Magistrate Judge's conclusion. The Magistrate Judge explained that the email could not demonstrate willful interference with Plaintiff's rights under the FMLA because the email had nothing at all to do with FMLA leave, but rather involved sick leave. While Plaintiff did take intermittent FMLA leave during the same time period as the seven days she marked off as sick, she took that leave to care for her father, not due to her own illness. So, the email could not be read by any reasonable juror as an implicit threat to Plaintiff's FMLA rights.

The undisputed evidence shows Plaintiff consistently requested and received FMLA leave during her sixteen years working for Defendant. Indeed, she admits Defendant never denied her FMLA leave requests and she never had any issues taking or returning from FMLA leave.[4] No reasonable jury could find Defendant interfered with her

---

[4] Plaintiff objects to this point, saying her termination over her August 11, 2017 leave request is proof that "she had an issue with taking FMLA leave." (Dkt. 95 at 5.) But this does not help her. Defendant granted that leave request without hesitation, and she took that leave without interference from Defendant. While she might argue her termination over taking that leave was *retaliation*, she cannot say Defendant ever *interfered* with her FMLA leave. Indeed, she admits "[a]ll other FML requests prior to this leave were granted without issue." (*Id.*)

FMLA leave at all—much less willfully. *See Smith v. St. Joseph's/Candler Health Sys., Inc.*, 770 F. App'x 523, 527 (11th Cir. 2019) (affirming summary judgment under two-year statute of limitations where evidence did not show genuine dispute about whether defendant willfully violated FMLA).

## 2.   Retaliation

Next, Plaintiff says Defendant retaliated against her for using FMLA leave when it terminated her employment.  (Dkt. 88-1 at 20.)  The Magistrate Judge concluded "the undisputed facts show that Defendant believed Plaintiff was misusing her FMLA leave for several years prior to her discharge, . . . that [] Ausborn[] consulted Defendant's labor relations department and legal department regarding this suspicion and sought guidance on addressing it several times, . . . and that in 2017 Defendant's internal police department investigated whether Plaintiff was abusing her FMLA leave[.]"  (Dkt. 92 at 16–17.)  Based on these facts, the Magistrate Judge determined Plaintiff did "not genuinely dispute Defendant's assertion Ausborn terminated her employment . . . because of her fraudulent misuse of FMLA leave" and she thus "failed to . . . show that Defendant willfully violated the FMLA by terminating her

employment." (*Id.* at 17.)   Plaintiff objects, saying there is record evidence she had a doctor's note confirming she attended an appointment on August 11, 2017 and could not return to work until the next day.  (Dkt. 95 at 11.)  She says Defendant's failure to reinstate her after it received this note constitutes willful retaliation.  (*Id.*)  Plaintiff is wrong again.

Plaintiff does not dispute the Magistrate Judge's finding that she never gave Ausborn documentation of a doctor's appointment on August 11, 2017 until (at the very least) some time after he terminated her on August 25, 2017.  It is not clear from the record if—or when—Plaintiff actually gave Defendant a doctor's note.  The doctor's note first appears in the record is as part of Plaintiff's grievance hearing.  That hearing (by which Plaintiff appealed her termination) is no longer an issue, the Court having decided the hearing was an internal process afforded by the parties' Collective Bargaining Agreement to determine whether Plaintiff's termination was appropriate under the terms of that Agreement. (Dkt. 40 at 5–7.)  The Magistrate Judge reached her finding of fact that Ausborn never got the note because plaintiff simply denied (without citing any record evidence) Defendant's allegation that she never produced a note or evidence of a doctor's appointment before her

August 27 termination.  (*Id.* at 4 n.1.)  In her objections to the R&R, Plaintiff now says "this fact is under great dispute because the record evidence shows, and Defendant admits, a doctor's note was produced," (Dkt. 95 at 7.)  But she cites no evidence of this.  She also provides no time frame as to when the note "was produced."  Before the Magistrate Judge, she asserted "***after*** she was terminated, she did produce the doctor's note." (Dkt. 88-1 at 13 (emphasis added).)  But (again) she cited no record evidence in support of that allegation.  She provided an affidavit in which she averred she told Ausborn on the day she was terminated that she had a note and that (on the same day) she thought Defendant would reinstate her the "next day" when she showed Defendant the note.  (Dkt. 88-1 at ¶¶ 7, 9.)  But she did not actually aver in the affidavit that she gave Defendant the note, let alone indicate when she provided it.  (Dkt. 88-1 at 44.)  So, maybe she gave Defendant the note but there is no evidence as to when she did so.  The key takeaway is that the Magistrate Judge properly concluded Ausborn never received a doctor's note for the August 11 appointment (or any other evidence to confirm the appointment occurred) before he terminated her employment on August 27.

Rather than attacking that assertion with record evidence, Plaintiff alleges that, once Defendant received the doctor's note at some time after terminating her, it should have reinstated her employment and that its failure to do so was illegal retaliation.  She suggests this shows Ausborn's decision was pretextual.  (Dkt. 95 at 16–17.)  But it only matters that Ausborn did not receive a note—or any other evidence of the doctor's appointment—*before* he decided to terminate Plaintiff.[5]   *See Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010) ("The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head."); *Champ v. Calhoun Cty.*

---

[5] In her opposition to summary judgment, Plaintiff did not contend Defendant's refusal to reinstate her was retaliation; instead, she said it was a violation of 29 C.F.R. § 825.218(a).  (Dkt. 88-1 at 24–25.)  Regarding retaliation, she said once Defendant knew about the doctor's note, the "intervening act" that caused Defendant to terminate her (*i.e.*, her lying about going to the doctor) was "shown to be non-existent," thus breaking the "causal link between the protected FML right and the termination." (*Id.*)  Plaintiff cited no authority for this proposition—nor could she. That's just not how it works.  Instead, courts look at what the decisionmaker thought when he or she made the decision.  *See Champ*, 226 F. App'x at 915–16.  There is no evidence Ausborn had any discriminatory intent when he decided to fire Plaintiff, but instead was acting on a reasonable belief that she lied.

*Emergency Mgmt. Agency*, 226 F. App'x 908, 916 (11th Cir. 2007) ("Honest reliance on inaccurate information is not discriminatory."). What happened after Ausborn's decision is immaterial to Plaintiff's retaliation claim.

Plaintiff points to no other evidence establishing Defendant retaliated against her for using FMLA leave. To the contrary, the evidence shows Defendant was cautious and judicious in its handling of Plaintiff's FMLA use and her ultimate termination. Indeed, Ausborn began to suspect Plaintiff was misusing her FML leave for almost two years before her termination. Still, Defendant approved each of her leave requests without question. It was not until Plaintiff's suspected pattern of abuse continued that Ausborn—in consultation with Defendant's labor relations and legal departments—thoroughly investigated Plaintiff. Indeed, Ausborn did not merely take Defendant's investigator at his word; he corroborated the investigator's findings by conducting his own investigation. Defendant's actions were anything but reckless and certainly did not disregard Plaintiff's FMLA rights.

Plaintiff says the Magistrate Judge erred by relying too heavily on Defendant's good-faith belief that she misused her FMLA leave, claiming

"the court should infer that the plaintiff's complaint is true—which would lead the 'honest belief' rule to be placed in direction tension with the summary judgment standard." (Dkt. 95 at 19.) But at the summary judgment stage, what her complaint says does not matter. What matters is the evidence. And the Magistrate Judge correctly concluded the undisputed evidence, even when resolving all inferences in favor of Plaintiff, clearly demonstrates Ausborn's good-faith belief that Plaintiff misused her FMLA leave. So, Defendant's decision to terminate her employment cannot be retaliatory as a matter of law.

### 3. Restoration

Finally, Plaintiff says she was entitled to be restored to her position after she disproved Defendant's "sole reason for [her] termination." (Dkt. 95 at 17.) She argues by failing to do so, Defendant violated 29 C.F.R. § 825.218(a) which says "[i]n order to deny restoration to a key employee, an employer must determine that the restoration of the employee to employment will cause substantial and grievous economic injury to the operations of the employer[.]" (*Id.*) The Magistrate Judge concluded this argument was inapposite because "Plaintiff asked to be reinstated following her discharge, not to be restored after any FMLA leave." (Dkt.

92 at 13.)  Plaintiff objects, conflating reinstatement with restoration and saying "[r]estoration . . . does not need to be requested," but that because Defendant wrongfully terminated her, she was not "automatically restored" and thus "ha[d] to request reinstatement."  (Dkt. 95 at 18.) Plaintiff's argument is meritless.

"[A]n employee has a right *following FMLA leave* to be restored to the same position or to an equivalent position[.]"  *Jones v. Aaron's Inc.*, 748 F. App'x 907, 919 (11th Cir. 2018) (emphasis added).  Plaintiff was restored to her position following her FMLA leave on August 11, 2017. Plaintiff did not fire her until August 25.  Plaintiff asked for *reinstatement* following her termination—not restoration following her FMLA leave.  So, her argument fails.  *See Cooper v. Walker Cty. E-911*, 2018 WL 358217, at *16 (N.D. Ala. July 26, 2018) ("Upon an employee's return and restoration to her former position (or an equivalent one), any subsequent adverse employment action cannot support an interference claim[.]"); *cf. Chavous v. City of Saint Petersburg*, 576 F. Supp. 3d 1040, 1050 (M.D. Fla. 2021) (employee was not entitled to restoration because he was no longer on FMLA leave when he was fired); *Satterlee v. Allen Press, Inc.*, 443 F. Supp. 2d 1236, 1246 (D. Kan. 2006) (same).

## IV.   Conclusion

The Court **OVERRULES** Plaintiff's Objections to the Magistrate Judge's Order and Final Report and Recommendation on Defendant's Motion for Summary Judgment (Dkt. 95), **ADOPTS** both of the Magistrate Judge's R&Rs (Dkts. 90, 92), **DENIES** Defendant's Motion for Judgment on the Pleadings (Dkt. 64), and **GRANTS** Defendant's Motion for Summary Judgment (Dkt. 79).

**SO ORDERED** this 9th day of March, 2023.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE